UNITED STATES of America ex rel.
William E. MARK, Petitioner,

v.

James A. CHRANS, Respondent.

No. 86 C 8579.

United States District Court,
N.D. Illinois, E.D.

Sept. 23, 1987.

William E. Mark, Pontiac, Ill., for petitioner.

Gary H. Schwartz, Asst. Atty. Gen. of Ill., Neil F. Hartigan, Atty. Gen. of Ill., Chicago, Ill., for respondent.

Memorandum Opinion and Order

ZAGEL, District Judge.

On November 12, 1982 William E. Mark was convicted of murder by a jury and sentenced to a term of 35 years by the Circuit Court of Lake County. He appealed his conviction to the Appellate Court which affirmed in a Rule 23 Order. The Court summarized the facts in this way.

"On June 12, 1982, at approximately 5:40 a.m., Officer Boehm of the Waukegan Police Department responded to a call that a person had been fatally stabbed in an apartment complex located at 2441 Dugdale Avenue, Waukegan, Illinois. When Boehm arrived at the location, he noticed a woman, Debbie Southers, crying at the entranceway to apartment 308. Upon entering the apartment, Boehm saw defendant, William Mark, dressed in a Navy uniform

and standing in the kitchen doorway. While in the apartment Boehm also saw the victim, John Carnes, who had been fatally stabbed in the chest, lying on a couch in the living room covered by a yellow blanket. Defendant and Debbie, his fiancee, were taken into separate bedrooms and interviewed by Boehm and other backup officers. Defendant and Debbie were also both asked to accompany the officers down to the Waukegan Police Department so that further statements could be taken by the local authorities. At approximately 10:30 a.m., after giving two statements in which he did not implicate himself in the incident, defendant confessed to the stabbing death of John Carnes."

Petitioner claims to have sought leave to appeal to the Supreme Court of Illinois and, in a sense, he did so. Papers filed by both parties here show that petitioner may have sought leave to appeal in June of 1986. (Respondent's Answer, par. 6 and attachments.) This attempt came too late since the Appellate Court affirmed on April 8, 1985 and the Petition for Leave to Appeal would have been due on May 13, 1985 (*Ill.Rev.Stat.*, ch. 110A, R. 315(b)). Petitioner's papers by contrast show that his motion for leave to file a late petition for leave to appeal was filed in August of 1986 and denied on September 29, 1986 by the Supreme Court (Petitioner's Response to Respondent's Answer and attachments). In any case, the petition for leave to appeal was filed over a year after its due date, and this failure to file within time limits is the equivalent of failing to seek leave to appeal.

The failure to seek leave to appeal to the state's highest court (on the precise issues presented here) is a procedural default precluding federal habeas review of the claim. *Nutall v. Greer*, 764 F.2d 462, 464–65 (7th Cir.1985). The petitioner seeks to avoid the default by saying it was "caused" by the fact that petitioner's case was being handled by a "senior law student" who did not explain further appellate procedures to him following the Appellate Court affirmance. This same assertion was made to the Supreme Court of Illinois

in the petitioner's motion there for leave to file his petition instanter (Petitioner's Response to Respondent's Answer and attachments). In response to petitioner's effort to avoid default, the Warden replies in effect: if this is true Mark is alleging ineffective assistance of counsel on appeal, and he must then pursue available state remedies, to wit, the Post–Conviction Hearing Act. See *People v. Frank*, 48 Ill.2d 500, 272 N.E.2d 25, 27 (1971).

The respondent's position is strong: (a) It broadly construes the petitioner's pro se complaint as alleging ineffective assistance of counsel on appeal. This gives petitioner the benefit of the doubt because, absent such an allegation, a decision not to pursue leave to appeal is one remitted to the tactical discretion of counsel. *Nutall v. Greer*, 764 F.2d at 465. An ordinary decision by competent counsel to forego leave to appeal would be a procedural default for federal habeas purposes. (b) State law clearly provides a remedy for ineffective assistance of appellate counsel.

There is, however, one unusual aspect of this case. If petitioner pursues his state remedies and the state court decides his appeal counsel was not ineffective, he will be foreclosed from raising in federal habeas corpus proceeding the issues he raises here (unless he can persuade a federal habeas court that the state court decision on competency of counsel is incorrect). The unique problem arises if the state court agrees with petitioner. Then the obvious remedy is to permit petitioner to file a late petition for leave to appeal. Yet I doubt a state trial court has the authority to order the state Supreme Court to permit the filing of a document or to consider the document on its merits. The statute may confer this power when it states the court "shall enter an appropriate order with respect to the judgment or sentence" (*Ill.Rev. Stat.* ch. 38, par. 122-6) but, in Illinois, statutory power over this sort of procedural issue is extremely limited. *People v. Joseph*, 113 Ill.2d 36, 99 Ill.Dec. 120, 495 N.E.2d 501 (1986). On the other hand, this Court cannot assume the Illinois courts will

not be able to formulate an appropriate remedy in this unusual circumstance.

It might be said that petitioner did present his claim of ineffective appellate counsel to the state court in the form of his motion in the Supreme Court. This is unpersuasive. There is nothing in the Supreme Court's summary denial of the motion that leads to the conclusion it decided the matter. The state's highest court is not an appropriate forum for the resolution of factual matters alleged in the motion, and there exists a post-conviction hearing process in the state trial court for their resolution.

I, therefore, find, with some hesitation, that petitioner has not exhausted his state remedies and the petition must be dismissed.

■■■ In the alternative, I would deny the petition on its merits. There are two claims: one, that his confession was involuntary and, two, that his confession was the fruit of an illegal arrest. Both matters were heard fully in state court, and consideration of the second claim is barred in federal habeas corpus. *Cardwell v. Taylor*, 461 U.S. 571, 103 S.Ct. 2015, 76 L.Ed.2d 333 (1983); *Holleman v. Duckworth*, 700 F.2d 391, 395 (7th Cir.), *cert. denied*, 464 U.S. 834, 104 S.Ct. 116, 78 L.Ed.2d 116 (1983). The first claim requires an examination of the state court record, acceptance of findings by the state court in its hearing and an independent determination by this Court whether the state court's decision that the confession was voluntary is supported by the record. *Miller v. Fenton*, 474 U.S. 104, 106 S.Ct. 445, 88 L.Ed.2d 405 (1985).

The record shows questioning of the petitioner occurred when he was not in custody. He voluntarily accompanied police down to the station for questioning upon being asked to do so by the police. He was transported to the police station in the front seat of a police car and, at the station, he waited in an open area with direct access to outdoors. He was not booked, fingerprinted, handcuffed, searched, charged, placed in a lockup or told he was under arrest or could not leave. The state

courts found no custody existed. If this is a finding under the Fourth Amendment then it is precluded from review here under *Stone v. Powell*, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976). If this is a finding under the Fifth and Sixth Amendments, *Berkemer v. McCarty*, 468 U.S. 420, 436–37, 104 S.Ct. 3138, 3148–49, 82 L.Ed.2d 317 (1984) (custody for Fourth Amendment purposes may be different from custody under *Miranda v. Arizona*), then it is adequately supported by the record.

In any event the warnings required by *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) were given. Giving unnecessary warnings does not create custody (*United States v. Owens*, 431 F.2d 349, 352 (5th Cir.1970)) but does satisfy the requirements of *Miranda* if a court should find that the subject of questioning was in custody.

Petitioner testified that, at several times, he asked his questioners if he could call the naval base where he was employed and if he could speak to his fiancee, who was also being questioned, and was told he could not until he gave a statement. Further, he said, the officers told him his initial statement was a lie and when he then asked to speak to his attorney the officers told him he had no more rights. He alleged the officers told him his act was one of passion and that if he confessed he would get probation but, if he did not, he would serve a long prison term or be executed. Finally, he stated, he confessed so that his fiancee and her daughter would not be involved. He testified he had been awake for 30 hours, was tired and hungry and emotionally distraught when he gave his statement to the police. He claimed to be a slow learner, without prior contact with the police. While the police told him his cooperation would be noted by the State's Attorney, they did not physically mistreat him.

Save for the acknowledgment that petitioner was told his first statement was false and that his cooperation would be noted by the prosecutor, the three police officers and one Assistant State's Attorney present at the questioning denied petitioner's assertions. They testified to the absence of physical or psychological abuse or coercion. They averred the absence of

threats of harm to petitioner, his family and friends. They testified he was not told that added punishment would occur absent a confession. They said he was calm, composed, coherent and able to understand his circumstances. He did not complain of lack of sleep. The trial court obviously found the testimony of the officers and the prosecutor to be credible and accepted their version of the facts.

The statements to petitioner that his first statement was false and that cooperation would be noted by the prosecutor do not render his confession involuntary. *Crooker v. California*, 357 U.S. 433, 437, 78 S.Ct. 1287, 1290, 2 L.Ed.2d 1448 (1958) (exhortation to tell the truth); *United States v. Curtis*, 562 F.2d 1153, 1154 (9th Cir.1977) (cooperation will be made known), *cert. denied*, 439 U.S. 910, 99 S.Ct. 279, 58 L.Ed.2d 256 (1978). The Appellate Court said "Detective Langdon's statement did not suggest any benefit would accrue to defendant should he, in fact, cooperate and we find, at the very most, it amounted to a mere advisement or exhortation for defendant to tell the truth."

There is no error in the state court's admission of petitioner's confession. On the testimony accepted by the state court along with the undisputed facts, I find the confessions voluntary.

The petition is dismissed for want of exhaustion of state court remedies and, in the alternative is DENIED.